UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 5:19-cr-00551 |
| | : | No. 5:23-cv-00586 |
| LUIS GOMEZ, | : | |
| Defendant | : | |

**O P I N I O N**
**Motion to Vacate, 28 U.S.C. § 2255, ECF No. 103 – Grant in part and Denied in part**
**Amended Motion to Vacate, 28 U.S.C. § 2255, ECF No. 121 – Grant in part, Denied in part, and Dismissed in part**

**Joseph F. Leeson, Jr.**                                                                                   May 21, 2025
**United States District Judge**

Luis Gomez filed a *pro se* Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255 challenging his conviction and sentence for drug and firearm offenses. Counsel was appointed to represent Gomez and an Amended Motion to Vacate was filed, which claimed trial counsel was ineffective at sentencing and for failing to file an appeal. For the reasons set forth below, the motions are granted in part based on a deficient appeal consultation. Gomez's direct appeal rights are reinstated. The motions are denied or dismissed in all other respects.

**I.   LEGAL STANDARDS**

   **A.   Motion to Vacate under 28 U.S.C. § 2255 – Review of Applicable Law**

Motions filed under 28 U.S.C. § 2255 are the presumptive means by which federal defendants can challenge their convictions or sentences that are allegedly in violation of the Constitution or laws of the United States or are otherwise subject to collateral attack. *Davis v. United States*, 417 U.S. 333, 343 (1974); *O'Kereke v. United States*, 307 F.3d 117, 122-23 (3d Cir. 2002). Section 2255 "states four grounds upon which such relief may be claimed: (1) 'that

the sentence was imposed in violation of the Constitution or laws of the United States;' (2) 'that the court was without jurisdiction to impose such sentence;' (3) 'that the sentence was in excess of the maximum authorized by law;' and (4) that the sentence 'is otherwise subject to collateral attack.'" *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (quoting 28 U.S.C. § 2255(a)).

    **B.**    **Ineffective Assistance of Counsel – Review of Applicable Law**

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. *Strickland v. Washington*, 466 U.S. 668 (1984). There is a strong presumption that counsel is effective and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. *Id.* at 689 (explaining that courts should not second-guess counsel's assistance"). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (internal quotations omitted). The court must consider the totality of the evidence, and the burden is on the petitioner. *Strickland*, 466 U.S. at 687, 695. "A habeas petitioner challenging the voluntary nature of his or her guilty plea faces a heavy burden." *Zilich v. Reid*, 36 F.3d 317, 320 (3d Cir. 1994). To satisfy the "prejudice" element in guilty plea cases, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**II.**    **FINDINGS OF FACT**

    **A.**    **Background**

On January 29, 2020, a Superseding Indictment charged Gomez with four counts: (1) possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A); (2) possession of a firearm by a felon in violation of 18 U.S.C. §

922(g)(1); (3) possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) maintaining a drug premises in violation of 21 U.S.C. § 856(a)(2). *See* ECF No. 14. Attorney Robert E. Sletvold was appointed to represent Gomez throughout the course of the proceedings. On October 14, 2021, following the jury selection phase of his trial, Gomez pled guilty to all four counts.[1] Sentencing was held on January 24, 2022.

At sentencing, the Honorable Edward G. Smith adopted the Presentence Investigation Report ("PSR"). *See* Sentencing, Notes of Testimony ("N.T.") 23:6-8, ECF No. 105. The PSR calculated Gomez's total offense level as 32 based upon Gomez's possession of 441.5 grams of pure methamphetamine, pursuant to USSG § 2D1.1(a)(5). *See id.* 9:7-8. *See also* PSR ¶¶ 36, 46 (applying the "drug house" enhancement and a reduction for acceptance of responsibility). Gomez had nine criminal history points, resulting in a criminal history category of IV. *See* Sent. N.T. 9:8-9. After the statutory mandatory minimum consecutive sentence on Count Three, Gomez's guideline range was 228-270 months. *See* Sent. N.T. 9:9-12. Attorney Sletvold argued for a downward variance from the guideline range because Gomez's criminal history score purportedly overstated his prior criminal conduct. *See* Sent. N.T. 9:22 – 10:18. The Court, finding that the issue with Gomez's prior criminal history did not warrant a departure, then

---

[1] In its recitation of the factual basis of the plea, the Government stated "that the pound of methamphetamine recovered in the defendant's dresser drawer next to his bed was suitable for distribution into smaller quantities. It was over 50 grams. It was 100 percent pure as tested by labs so 441.5 grams far exceed the 50 gram threshold." *See* Plea Hrg N.T. 49:6, 50:21 – 51:2, , ECF No. 107. The Court asked Gomez at the change of plea hearing:
> [D]o you understand that while the charge is that you possessed in excess of 50 grams of methamphetamine, for purposes of calculating the sentencing guidelines, what the probation officer will be looking at is the actual amount involved here. And the government has evidence, which it believes it can prove beyond a reasonable doubt, that you possessed 441.5 grams of methamphetamine. Do you agree, sir, that you possessed 441.5 grams of methamphetamine?

*See id.* at 30:6-15. Gomez responded "Yes." *See id.*

considered the argument for a downward variance. *See id.* at 11:4-13. After also considering the Section 3553(a) factors, the Court imposed a sentence at the very bottom of the guideline range: 228 months (nineteen years) imprisonment. *See id.* at 11:12-13, 23:13 - 31:1. Before the sentencing hearing concluded, the Court advised Gomez of his appeal rights, including the fourteen-day deadline to file a notice of appeal. *See id.* at 35:22 – 36:10. Gomez stated that he understood his appellate rights. *See id.* at 36:11-16.

No notice of appeal was filed. Instead, approximately a year later, Gomez filed a *pro se* Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. *See* Mot., ECF No. 103. Gomez argued that counsel was ineffective for failing to: (1) file a notice of appeal, (2) object to the Sentencing Commission's use of drug purity "as a proxy" for culpability, and (3) object to the § 924(c) charge based on Gomez's alleged lack of knowledge that the gun was in his home. *See id.* Counsel was appointed to represent Gomez in his habeas proceedings because an evidentiary hearing was required. *See* ECF No. 113. In the Order appointing counsel, the Court gave counsel until October 6, 2023, to file an amended section 2255 motion. *See id.* This deadline was subsequently extended until December 29, 2023. *See* ECF No. 116. No further extensions were requested or granted, but approximately two months later, counsel filed an Amended Motion to Vacate. *See* Am. Mot. ECF No. 121. The Amended Motion to Vacate essentially repeats Gomez's first and third claims. *See* Am. Mot. ECF No. 121. The Amended Motion does not pursue the claim that Gomez lacked knowledge about the gun[2] and, instead, argues for the

---

[2] This Court finds that Gomez's claim that he lacked knowledge about the gun is contradicted by the record. At the change of plea hearing, Gomez admitted that "the loaded 9mm pistol in the living room coupled with the loaded magazine that adequately fit that pistol in caliber that was recovered in [his] bedroom, in addition to the methamphetamine recovered inside [his] dresser drawer are all indicative of his willingness to use the firearm to protect or further his drug trafficking activities." *See* Plea Hrg N.T. 52:19 – 53:3. Gomez also admitted that "the cooperating witness, Mario Ceballos, whose DNA was also present on that pistol, would testify at trial that he and [Gomez] kept the pistol to protect their drug business that they

first time that counsel was ineffective in failing to move for a downward departure pursuant to USSG § 4A1.3(B)(1) on the grounds that Gomez's criminal history was overstated. *See id.* The Government filed responses to both motions. *See* ECF Nos. 109-110, 123. Gomez filed replies to the same. *See* ECF Nos. 112, 124. An evidentiary hearing was held on the motions, at which Gomez and Attorney Sletvold testified. *See* Ev. Hrg, ECF No. 126.

B. **Evidentiary Hearing**

Gomez testified that he expected to receive a sentence of fifteen (15) years imprisonment.[3] *See* Ev. Hrg 8:1-15, 13:6-11. He testified that he "couldn't believe it" when he was sentenced to nineteen years. *See id.* at 13:25 - 14:5. Gomez testified that he asked Attorney Sletvold at the sentencing hearing if he was going to be able to file the appeal, to which Attorney Sletvold "shook his head yes," giving Gomez the understanding that Attorney Sletvold would the the appeal. *See id.* at 14:6 – 15:7. However, Attorney Sletvold testified that Gomez did not ask him to file an appeal and that he never nodded his head in response to a question about filing an appeal. *See id.* at 39:10 – 40:1. Attorney Sletvold testified that Gomez never said the word "appeal" at any time in the courtroom on the day of the Sentencing Hearing. *See id.* at 39:24 – 40:1. After the hearing concluded, Attorney Sletvold did not speak with Gomez about an appeal. *See id.* at 40:2-5. Attorney Sletvold testified that he did, however, speak with Gomez's family immediately after the Sentencing Hearing because they were upset about the length of the sentence. *See id.* at 40:6 - 41:4. He explained to them the fourteen-day deadline to file an

---

had at the residence." *See id.* at 53:3-8. Accordingly, because any objection by Attorney Sletvold on this issue would have lacked merit, Gomez was not prejudiced by the failure.

[3] Gomez admits that he was not promised a sentence of fifteen years and that he faced a mandatory minimum sentence of fifteen years. *See* Ev. Hrg 8:4-6, 16:22-23. However, Gomez testified that he was expecting a sentence close to fifteen years because his codefendant received less than fifteen years. *See* Ev. Hrg 16:7-17. *See also United States v. Ivan Avalos*, No. 5:19-cr-00552 (E.D. Pa. filed Sept. 4, 2019) (Avalos, Gomez's codefendant, received a sentence of 135 months (11.25 years) imprisonment.).

appeal, but no one from Gomez's family asked Attorney Sletvold, either on the day of the Sentencing Hearing or at any time within the fourteen-day appeal window, about filing an appeal. *See id.* After the day of sentencing, Gomez never called[4] Attorney Sletvold about filing an appeal. *See id.* at 22:17-20, 41:5-8. Gomez sent two letters, dated March 10, 2022, and January 8, 2023,[5] to Attorney Sletvold inquiring as to the status of his appeal, but Attorney Sletvold testified that he did not not recall receiving either letter. *See* Ev. Hrg 20:15 – 16, 41:9-15. Attorney Sletvold testified that he did not see any errors that could be corrected through a direct appeal, but would have nevertheless filed an appeal if Gomez had asked "because of the ethical obligations for an attorney to file an appeal regardless of [his] assessment of the merits." *See id.* at 37:20-22, 43:19-25, 46:24 – 47:3.

When asked why he did not pursue an argument that the guidelines should be based upon a mixture and substance of methamphetamine, as opposed to actual (pure) methamphetamine, Attorney Sletvold explained that in the Eastern District of Pennsylvania, the guidelines "are applied as set forth in the charging documents or to what crime the defendant pleads guilty to," which in this case was actual methamphetamine. *See* Ev. Hrg. 38:18 – 39:9, 72:10-14. Attorney Sletvold also explained his strategy for pursuing a downward variance based on an overstated criminal history, instead of a departure. He stated: "My experience in federal court, and specifically with Judge Smith, and my training is to try and maintain credibility by doing -- by not making arguments that I don't think are going to influence the judge." *See id.* at 68:6-16 (testifying that he had been in front of Judge Smith "many" times).

---

[4] Gomez sent two letters, dated March 10, 2022, and January 8, 2023, to Attorney Sletvold inquiring as to the status of his appeal, but Attorney Sletvold testified that he did not not recall receiving either letter. *See* Ev. Hrg 20:15 – 16, 41:9-15. Notably, both letters were sent after the appeal deadline had expired.

[5] Both letters were sent after the appeal deadline had expired.

## III. ANALYSIS

### A. Counsel was ineffective for failing to consult with Gomez about an appeal.

Despite Gomez's testimony that he told Attorney Sletvold to file an appeal, Attorney Sletvold credibly testified that Gomez did not ask him to file an appeal or make any mention of an appeal. Aware of his obligations to file an appeal if one was requested, Attorney Sletvold testified that he would have filed an appeal if Gomez had asked. This Court finds the testimony of Attorney Sletvold, who has been practicing law for more than twenty-five years, primarily focused on criminal defense, *see* Ev. Hrg N.T. 25:7-24, to be more credible than that of Gomez.[6]

Having determined that Gomez did not ask Attorney Sletvold to file an appeal, the Court must now "determine whether counsel breached a constitutional duty to consult with the defendant regarding appeal." *See United States v. Purcell*, 667 F. Supp. 2d 498, 514 (E.D. Pa. 2009). "[C]ounsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Considering Gomez's sentence-length expectations and that Attorney Sletvold was aware Gomez's family was concerned about the length of the sentence that he felt the need to explain Gomez's appeal deadline to them, this Court finds that by not speaking with Gomez at all about an appeal, Attorney Sletvold's failure to consult with Gomez was deficient. *See Purcell*, 667 F. Supp. 2d at 515 (finding that even though the defendant did not expressly tell counsel to file an appeal, counsel was deficient in not consulting with the defendant about filing

---

[6] The Court makes this determination after having listened to the testimony of both Gomez and Attorney Sletvold and having viewed their demeanors. The Court finds, *inter alia*, that Attorney Sletvold had a good recollection of the events, his account was believable, and his testimony was consistent.

an appeal); Gov't FOF. ¶ 4, ECF No. 129 (acknowledging that the *Purcell* court would find Attorney Sletvold's performance deficient in failing to meet his "duty to consult"). This is not the end of the inquiry.

Prejudice is not presumed where defense counsel's deficient performance consists of a failure to consult with his client about an appeal. *See Purcell*, 667 F. Supp. 2d at 516. Rather, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. The Government suggests that Gomez would not have filed an appeal because there were no non-frivolous grounds for an appeal. *See* Gov't FOF ¶¶ 6-7. However, whether there were non-frivolous grounds for appeal is not the issue. "So long as a defendant can show that 'counsel's constitutionally deficient performance deprive[d him] of an appeal that he otherwise would have taken,' courts are to 'presum[e] prejudice with no further showing from the defendant of the merits of his underlying claims.'" *Garza v. Idaho*, 586 U.S. 232, 242 (2019) (quoting *Flores-Ortega*, 528 U.S. at 484). This Court finds that Gomez's concerns about the length of his sentence in comparison to the sentence of his codefendant, especially when combined with his letters dated March 10, 2022, and January 8, 2023, inquiring as to the status of his appeal, are sufficient to conclude that Gomez would have filed an appeal. Accordingly, the motions to vacate are granted on this ground and Gomez's direct appeal rights are reinstated *nunc pro tunc*.

> **B.    Counsel was not ineffective for failing to object to the Sentencing Commission's use of drug purity "as a proxy" for culpability.**

Attorney Sletvold testified that he made a strategic decision not to argue about the disparity between methamphetamine actual and methamphetamine mixture "because it wasn't the law or the trend in the Eastern District. . . . In the Eastern District, from what I knew, is what

you're charged with is how you, you know, begin to calculate the base offense level and go from there." Ev. Hrg 72:10-22. Gomez was charged with possession with intent to distribute 50 grams or more of methamphetamine (actual), not with a mixture and substance containing methamphetamine. *See* ECF No. 14. Further, at the change of plea hearing, the Court confirmed that Gomez understood "the charge is that [he] possessed in excess of 50 grams of methamphetamine" and that the sentencing guidelines would be calculated based on "the actual amount involved . . . 441.5 grams of methamphetamine." *See* Plea Hrg N.T. 30:6-15. The sentencing court did not err in calculating the advisory guideline range based on the amount of methamphetamine determined by the DEA lab reports. *See United States v. Ingram*, No. 22-56-KSM, 2024 U.S. Dist. LEXIS 161279, at *10 (E.D. Pa. Sep. 6, 2024).

Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[W]hile judges may be tempted to second guess defense counsel's decisions, we must keep in mind that 'advocacy is an art and not a science, and . . . strategic choices must be respected in these circumstances if they are based on professional judgment.'" *Gaines v. Superintendent Benner Twp. SCI*, 33 F.4th 705, 712 (3d Cir. 2022) (quoting *Strickland*, 466 U.S. at 681). Gomez's argument that Attorney Sletvold "had no strategic reason for not arguing for a variance from the methamphetamine actual guidelines based upon a policy disagreement with the guidelines when that argument was being successfully made in various jurisdictions," *see* Gomez FOF ¶ 31, ECF No. 128, is precisely the type of second guessing that is not appropriate.

Present counsel for Gomez admits "that neither the Third Circuit nor a Court of this District has addressed the issue" and, instead, relies on district court cases in other circuits rejecting Guidelines policy. *See* Gomez FOF ¶ 46. In the absence of any binding precedent or Third Circuit case law, Gomez has not shown that he was prejudiced by counsel's failure to

challenge the Guidelines or seek a variance. *See, e.g. Saavedra v. United States*, No. 3:23-CV-817-E-BK, 2024 U.S. Dist. LEXIS 132224, at *10-11 (N.D. Tex. July 26, 2024) (finding that counsel was not ineffective for failing to seek a variance based on treatment of methamphetamine purity levels because the defendant had "not shown that Fifth Circuit precedent would have entitled him to relief at the time of sentencing"); *Taylor v. United States*, No. 1:21-cv-01073-JDB-jay, 2024 U.S. Dist. LEXIS 69131, at *18 (W.D. Tenn. Apr. 16, 2024) (rejecting the defendant's ineffectiveness claim for counsel's failure to pursue a variance based on methamphetamine purity because there was no Sixth Circuit law supporting such a claim); *United States v. Becker*, No. 8:20-CR-79, 2023 U.S. Dist. LEXIS 226183, at *4 (D. Neb. Dec. 18, 2023) (concluding that counsel's failure to seek a variance based on the disparity between sentences for crimes involving actual methamphetamine and those involving a methamphetamine mixture did not constitute ineffective assistance of counsel because there was no Eighth Circuit case law to show that the outcome of the sentencing proceeding would have been different).[7] In the absence of prejudice, the ineffectiveness claim fails.

This claim is denied.

### C. Counsel was not ineffective for failing to move for a downward departure pursuant to USSG § 4A1.3(B)(1).

Initially, this Court finds that the claim counsel was ineffective for failing to move for a downward departure pursuant to USSG § 4A1.3(B)(1), which was raised for the first time in the Amended Motion to Vacate, is untimely. *See* 28 U.S.C. § 2255(f)(1) ("A 1-year period of

---

[7]   *See also Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013) (determining that sentencing counsel was not ineffective for failing to request a downward variance based on the crack/powder disparity even though a *Kimbrough*-type argument was available during sentencing); *Kimbrough v. United States*, 552 U.S. 85 (2007) (holding that the sentencing court was entitled to consider the effect of the crack/powder disparity in determining the appropriate sentence).

limitation shall apply to a motion under this section. The limitation period shall run from the latest of . . . the date on which the judgment of conviction becomes final."). The Amended Motion to Vacate was filed more than a year after judgment became final. It was also filed several months after the Court's deadline to file an amended motion expired and without leave. The claim is therefore dismissed as untimely.

Regardless, because Judge Smith determined that a downward departure was not warranted under USSG § 4A1.3, the claim lacks merit. *See Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir. 2006) ("A court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced."). Attorney Sletvold cannot be deemed ineffective for failing to pursue a meritless claim. *See United States v. Mulgrew*, No. 12-462, 2016 U.S. Dist. LEXIS 106774, at *21-22 (E.D. Pa. Aug. 12, 2016) (concluding that counsel, who motioned for a downward variance, was not ineffective for failing move for a downward departure on the same grounds because a departure would have been denied for the same reasons that the court denied a variance and counsel cannot be deemed ineffective for failing to bring a meritless motion). Moreover, Attorney Sletvold made a strategic decision to pursue a downward variance, instead of a departure, based on his "experience in federal court, and specifically with Judge Smith." *See* Ev. Hrg 68:6-16. "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. For all these reasons, the claim is also denied on its merits.

**D.      There is no basis for the issuance of a certificate of appealability.**

"Under the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA'), a 'circuit justice or judge' may issue a COA [certificate of appealability] only if the petitioner 'has made a substantial showing of the denial of a constitutional right.'" *Tomlin v. Britton*, 448 F. App'x 224, 227 (3d Cir. 2011) (citing 28 U.S.C. § 2253(c)). "Where a district court has rejected the

constitutional claims on the merits, . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* For the reasons set forth herein, Gomez has not shown that the Court's decision is debatable or wrong, or that jurists of reason would find it debatable whether its decision is correct.

## IV.     CONCLUSION

Although this Court finds Attorney Sletvold's testimony that Gomez did not ask him to file an appeal to be credible, counsel nevertheless failed to properly consult with Gomez about an appeal. Because Gomez would have filed an appeal but for Attorney Sletvold's failure to consult, Gomez's direct appeal rights are reinstated. The motions are granted on this sole claim, but otherwise denied or dismissed. Gomez's claim that Attorney Sletvold was ineffective in not arguing about the disparity in the Guidelines between methamphetamine actual and methamphetamine mixture is denied because Attorney Sletvold had a strategic reason for not seeking a variance from the methamphetamine actual guidelines and, regardless, in the absence of any binding precedent or Third Circuit case law, Gomez has not shown that he was prejudiced by counsel's failure to challenge the Guidelines or seek a variance. Gomez's third argument, that Attorney Sletvold was ineffective for failing to move for a downward departure pursuant to USSG § 4A1.3(B)(1) based on an overstated criminal history, in addition to the downward variance that he did request, was raised for the first time in the Amended Motion to Vacate and is

dismissed as untimely. The claim is also denied as meritless because Judge Smith determined that a downward departure was not warranted under USSG § 4A1.3.

    A separate Order follows.

                                          BY THE COURT:

                                          */s/ Joseph F. Leeson, Jr.*
                                          JOSEPH F. LEESON, JR.
                                          United States District Judge